Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-11-00381-CV

**CRYSTAL CITY, TEXAS**, Mayor Ricardo S. Lopez,
Councilman Richard Diaz, and Councilman Jose Sendejo,
Appellants

v.

Diana **PALACIOS**,
Appellee

From the 293rd Judicial District Court, Zavala County, Texas
Trial Court No. 10-07-12288-XCV
Honorable Cynthia L. Muniz, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:       Catherine Stone, Chief Justice
              Phylis J. Speedlin, Justice
              Rebecca Simmons, Justice

Delivered and Filed:  April 25, 2012

REVERSED AND DISMISSED; REMANDED

This is an accelerated appeal of the trial court's order denying Crystal City's plea to the jurisdiction. The appeal turns on whether provisions in the City's Charter and in the City's Personnel Policies Manual constituted an employment contract between the City and its former city manager, Diana Palacios. Because we conclude the provisions did not create an

employment contract, we reverse the trial court's order and dismiss Palacios's breach of contract claim. We remand the cause to the trial court for further proceedings.[1]

## BACKGROUND

Palacios was hired as the city manager in 2003. In 2006, the City Council rejected Palacios's request for a written employment agreement. In 2009, a majority of the City Council voted to discontinue Palacios's employment due to lack of confidence. Palacios subsequently sued the City, alleging, *inter alia*, that the City breached its contract with her.

## CITY CHARTER AND PERSONNEL POLICIES MANUAL

In arguing that a contract was formed, Palacios relied on provisions from the City's Charter and its Personnel Policies Manual ("Manual"). The pertinent referenced provisions from the City's Charter state:

> Section 18. Appointment of city manager.
>
> The council shall appoint an officer of the city who shall have the title of city manager and who shall have the powers and perform the duties in this charter provided. [sic] No councilman shall receive such appointment during the term for which he shall have been elected, nor within one year after the expiration of his term.
>
> Section 19. Removal of city manager.
>
> The council shall appoint the City Manager for an indefinite term or a two-year term, and may remove him by a majority vote of its members. At least thirty days before such removal shall become effective, the council shall by a majority vote of its members adopt a preliminary resolution stating the reasons for his removal. The manager may reply in writing and may request a public hearing, which shall be held not earlier than twenty days nor later than thirty days after the filing of such request. After such public hearing, if one be requested, and after full consideration, the council by majority vote of its members may adopt a final resolution of removal.

---

[1] We note that Palacios's First Amended Original Petition also asserted a claim for violations of the Texas Open Meetings Act, which includes allegations pertaining to the procedure the City followed in terminating her.

Section 21.  Right of city manager and other officers in council.

The city manager, the heads of all departments, and such other officers of the city as may be designated by vote of the council shall be entitled to seats in the council, but shall have no vote therein.  The city manager shall have the right to take part in the discussion of all matters coming before the council, and the directors and other officers shall be entitled to take part in all discussions of the council relating to their respective offices, departments, or agencies.

Section 40.  The city manager; powers and duties.

The city manager shall be the chief executive officer and the head of the administrative branch of the city government.  He shall be responsible to the council for the proper administration of all affairs of the city and to that end, he shall have power and be required to:

(1)    Appoint and, when necessary for the good of the service, remove all officers and employees of the city except as otherwise provided by this charter and except as he may authorize the head of a department to appoint and remove subordinates in such department.

(2)    Prepare the budget annually and submit it to the council and be responsible for its administration after adoption.

(3)    Prepare and submit to the council as of the end of the fiscal year a complete report on the finances and administrative activities of the city for the preceding year.

(4)    Keep the council advised of the financial condition and future needs of the city and make such recommendations as may seem to him desirable.

(5)    Perform such other duties as may be prescribed by this charter or required of him by the council, not inconsistent with this charter.

Palacios also relied on the following provisions contained in the Manual:

1.02 Responsibility for Implementation of Personnel Policies

The City Manager is responsible for administration of the personnel policies and may issue detailed procedures to [i]mplement adopted policies.  The City Manager may delegate authority to appropriate staff members to act in the City Manager's behalf in the administration of these policies.

With the exception of matters of appointments reserved to the City Council by statute of [sic] charter provision, the authority and responsibility for the conduct and administration of all functions of the City and its departments, offices and

agencies is vested in the City Manager as the Chief administrative officer of the city. Final authority, in the form of review and approval, is reserved to the City Manager with regard to all personnel matters and subjects covered by these regulations.

1.04 Applicability of Personnel Policies

The personnel policies apply equally to all employees of the City of Crystal City unless a class of employees is specifically exempted. The exempt service shall include all elected officials and members of citizen boards and commissions, [v]olunteer personnel, and personnel appointed to serve without pay, consultants, [a]nd counsel rendering temporary professional service.

19.05 Dismissal

A new employee may be dismissed at any time during the probationary period when in the judgment of the supervisor and the City Manager, the quality and performance of his or her work does not merit continuation with the City of Crystal City's staff.

An employee who has completed his or her initial probationary period may be dismissed only for just cause by the City Manager.

After examining the Charter and Manual Provisions and the relevant law, the trial court concluded that Palacios "established the elements of a contract of employment with Defendant under Defendant's personnel policy manual and City Charter." The trial court further concluded that the employment contract satisfied "the statutory prerequisites of a contract as defined under §271.151(2) and §271.152 of the Texas Local Government Code and for which a legislative waiver of immunity from suit exists." Accordingly, the trial court denied the City's plea to the jurisdiction.

## STANDARD OF REVIEW

"Immunity from suit deprives a trial court of jurisdiction." *City of Houston v. Williams*, 353 S.W.3d 128, 133 (Tex. 2011). "Whether a trial court possesses jurisdiction is a question of law we review *de novo*." *Id*.

**DISCUSSION**

Section 271.152 of the Texas Local Government Code provides a waiver of immunity of suit as follows:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2005). In order to meet the definition of a "contract subject to this subchapter," the contract must: (1) be in writing; (2) state the essential terms of the agreement; (3) provide for goods and services to the local governmental entity; and (4) be executed on behalf of the local governmental entity. *City of Houston*, 353 S.W.3d at 135.

The Texas Supreme Court has recognized that "a unilateral employment contract is created when an employer promises an employee certain benefits in exchange for the employee's performance, and the employee performs." *Id.* at 136. The Texas Supreme Court has also recognized that "in some circumstances, an ordinance or group of ordinances can constitute a unilateral contract," noting "a court may determine, as a matter of law, that multiple documents comprise a written contract." *Id.* at 136-37.

In *City of Houston*, a group of former firefighters for the City of Houston alleged a breach of contract claim against the City for underpayment of lump sums due upon termination of employment. 353 S.W.3d at 131. In construing the ordinances the firefighters relied on to form their contractual relationship, the Texas Supreme Court noted that the ordinances promised the firefighters "specific compensation in the form of overtime pay and termination pay" in exchange for their performance of the duties expressly set forth in the ordinances. *Id.* at 138. The court then examined whether the ordinances stated the essential terms of the agreement between the firefighters and the City. *Id.* at 138-39. The court noted, "In the context of

employment agreements, typical essential terms include, among others, compensation, duties or responsibilities." *Id*. at 139. After examining the ordinances, the court held that they contained the essential terms of an employment agreement, including (1) defining the "workweek" as the time of performance; (2) setting forth the specific compensation to be paid in defining "regular rate of pay" and "overtime" and in the various termination pay, overtime, holiday, vacation, and leave provisions; and (3) describing the services to be performed. *Id*. The court discounted the City's concern about the impact of its holding, noting, "most municipal ordinances will not function as contracts within the meaning of section 271.151(2), because most will not contain the detailed request for performance and promised compensation found [in the ordinances in question], nor will they be cognizable as an offer to identifiable offerees as these Ordinances are." *Id*. at 143.

The provisions from the City's Charter and the Manual cited by Palacios are clearly distinguishable from the ordinances considered in *City of Houston*. The provisions do not promise "in detail specific compensation in return for specified services," nor are they "cognizable as an offer to identifiable offerees." Instead, the provisions are global general policy statements applicable to all employees, and no provision details specific compensation to be paid to any employee. The provisions of the Manual pertaining to compensation cited by Palacios, including vacation pay (chapter X), sick leave (chapter XI), and termination pay (section 7.15), are simply general policies pertaining to the accrual and payment of those benefits. None of those provisions contain specific dollar amounts to be paid as salary or for accrued benefits. Moreover, Palacios seeks to use these provisions in a different manner than the firefighters. Instead of seeking to be paid specific compensation promised for the past performance of

specific duties, Palacios seeks to use the provisions to alter the presumption of at-will employment and obtain prospective relief.

### A.  Charter's Procedural Requirements

With regard to the procedural requirements contained in the City Charter that were to precede Palacios's termination, the Fifth Circuit examined a similar procedural restriction pertaining to termination in *Henderson v. Sotelo*, 761 F.2d 1093, 1097-1098 (5th Cir. 1985).  In that case, the city's charter provided that the city manager could remove certain employees "with the advice and consent of the [city commissioners]."  *Id*. at 1096-97.  The city manager had not sought the advice and consent of the city commissioners before terminating the employee who filed suit against the city.  *Id*. at 1097.  The issue presented was whether the charter provision requiring the "advice and consent" of the city commissioners "may have given rise to a mutual understanding which would justify a substantive entitlement under Texas law to continued employment absent cause for termination."  *Id*. at 1097.

The Fifth Circuit noted that the United States Supreme Court had remarked, "[t]he categories of substance and procedure are distinct," and "'[p]roperty' cannot be defined by the procedures provided for its deprivation."  *Id*. (quoting *Cleveland Bd. of Edu. v. Loudermill*, 470 U.S. 532, 541 (1985)).  The Fifth Circuit concluded that the charter provision merely conditioned an employee's removal on compliance with certain specified procedures and did not grant a right to continued employment.  *Id.*  The Fifth Circuit held, "A violation of such procedures, though it might give rise to some other cause of action against the employer, 'would not seem to *create* a property interest which otherwise did not exist.'"  *Id*. at 1097-98 (emphasis in original) (quoting *Wells v. Hico Ind. Sch. Dist.*, 736 F.2d 243, 253 n.13 (5th Cir. 1984)); *see also Byars v. City of Austin*, 910 S.W.2d 520, 524 (Tex. App.—Austin 1995, writ denied) ("Hearings and grievance

procedures may be granted for reasons other than protection against deprivation of a substantive right; such procedures do not create a property interest in the employee's job.").

### B.      Manual's "Just Cause" Provision

With regard to Palacios's reliance on section 19.05 of the Manual stating employees who have completed their probationary period may be dismissed only for just case, the City notes that the provision actually states "may be dismissed only for just cause *by the City Manager*." Furthermore, although another provision in the Manual contains a list of what could constitute just cause for disciplinary action to be taken against an employee by the City Manager, the provision states, "Just cause for disciplinary action includes ***but is not limited*** to the following." (emphasis added).

In *Montgomery County Hosp. Dist. v. Brown*, the Texas Supreme Court rejected the contention that the type of language relied upon by Palacios alters at-will employment. 965 S.W.2d 501, 502 (Tex. 1998). The court asserted:

> For [a binding] contract [of employment] to exist, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances. General comments that an employee will not be discharged as long as his work is satisfactory do not in themselves manifest such an intent. Neither do statements that an employee will be discharged only for "good reason" or "good cause" when there is no agreement on what those terms encompass. Without such agreement the employee cannot reasonably expect to limit the employer's right to terminate him.

*Id*. at 502. In this case, the term "just cause" is not limited to "clearly specified circumstances." *Id*. At most, the Manual lists several circumstances that constitute just cause; however, just cause is not restricted to the listed circumstances. Accordingly, based on the holding in *Brown*, no contract was formed based on section 19.05 of the Manual. *See also Solis v. City of Eagle Pass*, No. 04-09-00658-CV, 2010 WL 4008438, at *2-3 (Tex. App.—San Antonio Oct. 13, 2010, no pet.) (mem. op.) (refusing to find contract created where personnel policy permitted dismissal

for "just cause" but gave the city manager complete discretion to determine what constitutes "just cause"). Although Palacios cites three Fifth Circuit decisions in her brief in support of the proposition that a provision limiting termination to "just cause" can create an employment contract, each of these opinions pre-dates the Texas Supreme Court's decision in *Brown*. *See Aiello v. United Air Lines, Inc.*, 818 F.2d 1196, 1198-1201 (5th Cir. 1987); *Schaper v. City of Huntsville*, 813 F.2d 709, 713-14 (5th Cir. 1987); *Bueno v. City of Donna*, 714 F.2d 484, 492 (5th Cir. 1983).

### C.   Individual City Employees

The City also argues that if it is immune, its employees are immune. Palacios conceded, however, that she sued the employees only in their official capacity.

### CONCLUSION

The trial court erred in concluding that a contract was formed between the City and Palacios. The trial court's order is reversed, and Palacios's breach of contract claim is dismissed. The cause is remanded to the trial court for further proceedings.

Catherine Stone, Chief Justice